THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

_____
                                    )
ADRIAN FOWLER and KITIA HARRIS,     )
on behalf of themselves and         )
others similarly situated,          )
                                    )
                                    )   Case No. 4:17-cv-11441
        Plaintiffs,                 )
                                    )   CLASS ACTION
        v.                          )
                                    )   Honorable Linda V. Parker
RUTH JOHNSON, in her official capacity )
as Secretary of State of the Michigan )   PLAINTIFFS' RESPONSE TO
Department of State,                )   DEFENDANTS' MOTION TO
                                    )   DISMISS AND FOR
        Defendant.                  )   SUMMARY JUDGMENT
_____ )

EQUAL JUSTICE UNDER LAW
Phil Telfeyan
Catherine Sevcenko
Rebecca Ramaswamy
400 7th Street NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
*Counsel for Plaintiffs*

MICH. ATTORNEY GENERAL
John G. Fedynsky (P65232)
Assistant Attorney General
Civil Litigation Division
525 W. Ottawa St., P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
FedynskyJ@michigan.gov
*Counsel for Defendant*

MAURICE & JANE SUGAR LAW CENTER
FOR ECONOMIC & SOCIAL JUSTICE
John C. Philo (P52721)
Anthony D. Paris (P71525)
4605 Cass Avenue
Detroit, MI 48201
(313) 993-4505
jphilo@sugarlaw.org
*Co-Counsel for Plaintiffs*

**COUNTERSTATEMENT OF THE ISSUE**

1. Should this Court deny the Secretary's Motion to Dismiss because Plaintiffs have properly raised a constitutional challenge to Michigan's policy of suspending driver's licenses of those unable to pay court debts without considering ability to pay?

**CONTROLLING AUTHORITY**

*Bearden v. Georgia*, 461 U.S. 660 (1983)
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
*Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002)
*Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592 (6th Cir. 2007)
*Tate v. Short*, 401 U.S. 395 (1971)
*United States Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973)
*Williams v. Illinois*, 399 U.S. 235 (1970)

Mich. Com. Laws Ann. § 257.321(a)(2)

## I. Introduction

The question before this Court is whether, as Plaintiffs allege, Michigan suspends driving privileges for inability to pay court debt. Although Defendant argues that "driving privileges depend on ability to follow the law [not on ability to pay]," Defendant ignores the fact that two drivers can commit the exact same infraction and have different outcomes based solely on wealth-status. A driver who (like Kitia Harris) was cited for "impeding traffic" and was imposed a fine of $150 but who (unlike Kitia Harris) could afford to pay the fine would keep her driver's license. Two individuals could have identical driving histories, commit identical

1

minor infractions, and receive identical fines. The one who pays keeps her license, while the one who cannot afford to pay loses her license. The one who cannot afford to pay her court debt then suffers all the foreseeable consequences that follow, including difficulty finding and maintaining employment, increased transportation costs for medical needs, and greater barriers to caring for dependent relatives.

Because all of the issues raised in Defendant's Motion to Dismiss reiterate arguments already before this Court, and in the interest of judicial efficiency, Plaintiffs hereby reincorporate by reference their arguments from their briefing in support of their Motion for Preliminary Injunction. ECF Docs. 2, 13. In addition, Plaintiffs further respond below and respectfully request that this Court deny Defendant's Motion to Dismiss and Motion for Summary Judgment. Because the issues before the Court have now been fully briefed (in both this briefing and the briefing regarding Plaintiffs' requested preliminary injunction), Plaintiffs respectfully request that this Court set all matters for argument to resolve the pending motions as expeditiously as practicable.

II. **Michigan's Driver's License Scheme Is Unconstitutional Because It Penalize Non-Willful Non-Payment in Violation of the Due Process Clause**

Defendant oversimplifies the matter by equating inability to pay a court debt with failure to follow a court order. Because inability to pay court debt can be non-

2

willful, it cannot be punished absent a showing of willfulness. *See Bearden v. Georgia*, 461 U.S. 660, 668 (1983) (stating that the distinction between inability and refusal to pay "is of critical importance" before punishment can be imposed).

Michigan's scheme is discriminatory not because it imposes fines for breaking traffic rules but because penalties and consequences are dependent on ability to pay. *Bearden*, 461 U.S. at 668; *Williams v. Illinois*, 399 U.S. 235, 244 (1970) (holding that the maximum penalty for any offense must "be the same for all defendants irrespective of their economic status"). An offense like "impeding traffic" is not punishable by suspension; effectively, Michigan punishes those who cannot pay more severely than those who can afford to do so. By applying unequal penalties based solely on wealth-status, Michigan violates the Fourteenth Amendment's prohibition against punishment for inability to pay.

Contrary to Defendant's assertion, Plaintiffs are not asking "this Court [to] decide which violators are willful and are unable to pay." ECF Doc. 14 at 4. Indeed, it is Defendant that should have determined willfulness before suspending licenses because the Constitution requires her to confirm ability-to-pay *before* suspending the license of someone who did not pay a court debt. *See Bearden v. Georgia*, 461 U.S. at 672; *Tate v. Short*, 401 U.S. 395, 398 (1971) (holding that automatic conversion of a fine to a jail sentence due to nonpayment is

3

unconstitutional without an ability-to-pay analysis first). Without any ability-to-pay analysis, Defendant will inevitably suspend the licenses of many who, like Plaintiffs, are simply unable to pay their court debt, thus violating the Constitution. *Bearden*, 461 at 672.

Although Defendant claims that "ability to pay can be considered" by a state court when a fine is initially imposed, the Secretary of State suspends licenses across the board, whether or not any ability-to-pay hearing occurred. Mich. Com. Laws Ann. § 257.321(a)(2). This would be a different case if the Secretary of State, before suspending licenses, checked to ensure that an ability-to-pay hearing occurred and only suspended licenses of those who were adjudged willful non-payers. In reality, courts are not holding ability-to-pay hearings and, even if they did, the Secretary of State makes no such inquiry. ECF Doc. 1 at ¶¶ 67–70. The Secretary of State's constitutional failure is her indiscriminate suspension of licenses, even of those who are unable to pay and who never had any ability-to-pay hearing.

Defendant continues to ignore the relevant Supreme Court precedents that foreclose the argument Defendant presses. Defendant does not cite, much less distinguish, *Bearden v. Georgia*, 461 U.S. 660 (1983), *Williams v. Illinois*, 399 U.S. 235 (1970), or *Tate v. Short*, 401 U.S. 395 (1971). In *Bearden*, an individual was imposed a fine, could not afford to pay it, and then was unconstitutionally punished

for his inability to pay. 461 U.S. at 668. The Supreme Court did not hold — as Defendant argues here — that the original moment of imposition of the fine was when the ability to pay should have occurred. The Supreme Court instead held that punishment for inability to pay a fine is unconstitutional; a willfulness determination must be made first. *Id.* at 672.

Defendant's contention that the original court order imposing a fine satisfies the constitutional requirement for an ability-to-pay hearing is inconsistent with the Supreme Court's holding in *Tate* that a state's effort to punish an individual for non-willful non-payment was unconstitutional. *Tate*, 401 U.S. at 398. The remedy was not to hold an ability-to-pay hearing at the initial imposition of the fine (something Michigan does not do anyway), but to require an ability-to-pay hearing before punishment is imposed for non-payment. *See id.* at 401.

Michigan has failed procedural due process requirements at two stages. Initially, courts often impose fines without ability-to-pay hearings. ECF Doc. 1 at ¶ 67. But that failure is not at issue in this case. The second failure — and the one Plaintiffs challenge — is the Secretary of State's suspension of licenses without any ability-to-pay assessment. *Id.* at 69–70. The Secretary of State's actions (which follow the unconstitutional state laws) are fundamentally flawed and result in suspensions levied against people who cannot pay. The Constitution requires the

5

Secretary of State to verify that a driver has the ability to pay outstanding fines before suspending his or her license. *Williams*, 399 U.S. 235 (1970) ("[T]he constitutional imperatives of the Equal Protection Clause must have priority over the comfortable convenience of the status quo."). In short, while willful non-payers can be penalizes, non-willful non-payers cannot.

### III. Michigan's License Suspension Scheme Is Irrational and Thus Unconstitutional

Suspending the licenses of people who are too poor to pay their fines is irrational and undermines legitimate state interest in collecting the money it is owed. A state whose chosen policy directly contradicts its stated goal is either (a) acting irrationally or (b) motivated by an impermissible goal, such as animus against people who are poor; in either case, its statute cannot survive rational review. *Cf. United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 538 (1973) (striking down a law aimed at preventing disfavored individuals from participating in the food stamp program because it undercut the program's goals of helping those most in need). While other state's policy choices do not define constitutional requirements, they shed light on whether Michigan's choice is rationally related to its purported interest. The fact that other states serve their interests by offering alternatives like community service (which can save the state money) or payment plans (which can help generate modest revenue) illustrates that Michigan is undercutting its own interests. By

6

suspending licenses of those too poor to pay, Michigan is trapping debtors in a cycle of poverty, thus undercutting the state's own goal of recouping its court debt. In short, Michigan's scheme is counterproductive; its suspensions directly contradict its stated goal.

Defendant's argument that "fines are rational" misses the point; it is irrational and unconstitutional to punish non-payers who are unable to satisfy their fines. Plaintiffs are not asking this Court to hold that fines are irrational or to order Michigan to stop imposing them. Just like in *Bearden*, *Williams*, and *Tate*, fines may initially be a valid punishment. But just like in those Supreme Court cases, a state cannot then penalize someone's inability to pay a fine unless it shows that non-payment was willful. *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 608 (6th Cir. 2007) (holding that the automatic incarceration of an arrestee due to his failure to pay a fine violates due process if it is not preceded by a hearing to determine his ability to pay). The principle in our justice system is clear: no person should be punished for her inability to make a monetary payment. This principle does not require the abolition of fines, but merely what the Supreme Court has already held: no additional punishment for inability to pay. *Williams*, 399 U.S. at 244. Michigan can continue imposing fines for minor infractions; it can even suspend licenses of willful non-payers; what it cannot do is suspend licenses of those

7

who cannot pay or fail to hold ability-to-pay hearings before suspending licenses.

### IV. Defendant's Other Arguments Are Unavailing and This Matter Is Ready for Adjudication

Defendants' attacks on the named Plaintiffs are inappropriate and premature. Plaintiffs are burdened with the same disability as thousands of other Michiganders: they cannot drive because they cannot afford to pay their traffic fines. *See* ECF Doc. 1 at ¶¶ 26–27. This Court will have a chance to consider Defendant's argument that the named Plaintiffs are improper class representatives or have interests atypical of other proposed class members when considering Plaintiffs' motion for class certification, which has yet to be filed. *See* Fed. R. Civ. P. 23(c)(1)(A).

Defendant also insists that there is no fundamental right to intrastate travel, but the Sixth Circuit has held otherwise. *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) (holding that "the Constitution protects a right to travel locally through public spaces and roadways"). The real issue is a factual one: whether having a suspended driver's license for reasons unrelated to traffic safety inhibits a person's mobility sufficiently to interfere with his or her constitutional rights. This turns on a factual question about what realistic alternative Plaintiffs might have to travel. For the purposes of Defendant's motion, Plaintiffs' allegations regarding the inadequacy of public transportation must be taken as true.

8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007). Whether denial of driving privileges effectively removes all ability to travel depends on facts that have been alleged and can be proven at trial; these factual questions are not ripe for resolution.

Defendants' have raised a range of inapposite procedural objections to this Court's jurisdiction. These have been addressed more fully in prior briefing, but to reiterate: the *Rooker-Feldman* doctrine does not apply because Plaintiffs are not challenging their underlying fines, any findings of driving infractions, or any other state court judgment; they are challenging the Secretary of State's executive action in suspending their licenses without considering their inability to pay. *See* ECF Doc. 13 at 4–6. Because state law is unambiguous, *Pullman* abstention cannot apply, and because there are no ongoing state proceedings, *Younger* abstention cannot apply. *See id.* at 7–11.

For all of these reasons raised above and in ECF Docs. 2 and 13, Plaintiffs respectfully request that this Court deny Defendant's motion and grant Plaintiffs' requested preliminary injunction.

        Respectfully submitted,

        */s/ Phil Telfeyan*
        Phil Telfeyan
        Catherine Sevcenko
        Rebecca Ramaswamy
        Equal Justice Under Law
        400 7th Street NW, Suite 602

Washington, D.C. 20004
ptelfeyan@equaljusticeunderlaw.org
(202) 505-2058

John C. Philo (P52721)
4605 Cass Avenue
Detroit, MI 48201
(313) 993-4505
jphilo@sugarlaw.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that, on July 21, 2017, I electronically filed the above document with the Clerk of the Court using the ECF System, which will provide electronic copies to the counsel of record.

*/s/ Phil Telfeyan*
Attorney for Plaintiffs