UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ADRIAN FOWLER and,
KITIA HARRIS,

Case No. 4:17-cv-11441

                    Plaintiffs,

Hon. Linda V. Parker
Magistrate Mona K. Majzoub

v.

RUTH JOHNSON, in her official
capacity as Secretary of State of
the Michigan Department of State,

**EXPEDITED CONSIDERATION
REQUESTED
BY TUESDAY, DECEMBER 26, 2017
AT 12:00 P.M.**

                    Defendant.

_____/

Anthony D. Paris (P71525)
John C. Philo (P52721)
Sugar Law Center for Economic &
Social Justice
Attorneys for Plaintiffs
4605 Cass Ave., Ste. 200
Detroit, MI 48201-1256
Ph. (313) 993-4505
tparis@sugarlaw.com
jphilo@sugarlaw.org

Phil Telfeyan
Catherine B. Sevcenko
Rebecca R. Ramaswamy
Equal Justice Under Law
Attorney for Plaintiffs
400 7th Street, Ste. 602
Washington, DC 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
catherine@equaljusticeunderlaw.org

John G. Fedynsky (P65232)
Assistant Attorney General
Michigan Dep't of Attorney General
Attorney for Defendant
Civil Litigation Employment &
Elections Division
525 W. Ottawa St., P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
FedynskyJ@michigan.gov

**DEFENDANT'S EMERGENCY MOTION
FOR STAY PENDING APPEAL**

On December 14, 2017, the Court granted Plaintiffs' motion for preliminary injunction and enjoined Defendant Secretary of State "from enforcing Michigan Compiled Laws § 257.321a to suspend the driver's licenses of people unable to pay their traffic debt." (R. 21, Page ID # 268.) On December 15, 2017, Defendant filed a notice of appeal of this order. (R. 22.) For the reasons stated in the accompanying brief, the Court should stay its injunction order pending appeal. Defendant's counsel Assistant Attorney General John Fedynsky spoke on the telephone with Plaintiffs' lead counsel Phil Telfeyan to explain the nature of this motion and its legal basis. E.D. Mich. LR 7.1(a).[1] Concurrence was not forthcoming. Emergency relief on an expedited basis is appropriate for the reasons stated in the brief.

---

[1] Plaintiffs' lead counsel mentioned that he will be travelling out of the country this week and has indicated Catherine Sevchenko is available in his absence.

1

BILL SCHUETTE
Attorney General

*/s/ John G. Fedynsky*
John G. Fedynsky
Assistant Attorney General
Attorney for Defendant
Civil Litigation, Employment &
Elections Division
G. Mennen Williams Bldg., 5th Fl.
525 W. Ottawa St. P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
fedynskyj@michigan.gov
(P65232)

Dated:  December 19, 2017

2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ADRIAN FOWLER and,
KITIA HARRIS,

              Plaintiffs,

v.

RUTH JOHNSON, in her official
capacity as Secretary of State of
the Michigan Department of State,

              Defendant.

_____/

Case No. 4:17-cv-11441

Hon. Linda V. Parker
Magistrate Mona K. Majzoub

**EXPEDITED CONSIDERATION
REQUESTED
BY TUESDAY, DECEMBER 26, 2017
AT 12:00 P.M.**

| | |
|---|---|
| Anthony D. Paris (P71525)<br>John C. Philo (P52721)<br>Sugar Law Center for Economic &<br>Social Justice<br>Attorneys for Plaintiffs<br>4605 Cass Ave., Ste. 200<br>Detroit, MI 48201-1256<br>Ph. (313) 993-4505<br>tparis@sugarlaw.com<br>jphilo@sugarlaw.org | Phil Telfeyan<br>Catherine B. Sevcenko<br>Rebecca R. Ramaswamy<br>Equal Justice Under Law<br>Attorney for Plaintiffs<br>400 7th Street, Ste. 602<br>Washington, DC 20004<br>(202) 505-2058<br>ptelfeyan@equaljusticeunderlaw.org<br>catherine@equaljusticeunderlaw.org<br><br>John G. Fedynsky (P65232)<br>Assistant Attorney General<br>Michigan Dep't of Attorney General<br>Attorney for Defendant<br>Civil Litigation Employment &<br>Elections Division<br>525 W. Ottawa St., P.O. Box 30736<br>Lansing, MI 48909<br>(517) 373-6434<br>FedynskyJ@michigan.gov |

**<u>BRIEF IN SUPPORT OF DEFENDANT'S
EMERGENCY MOTION FOR STAY PENDING APPEAL</u>**

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.    Should the Court stay its injunction order pending appeal?

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

<u>*Authority*</u>:

<u>Fed. R. Civ. P. 65 (d)(1) *Contents:*</u>  Every order granting an injunction and every restraining order must . . . (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required.

<u>Fed. R. Civ. P. 65 (c) Security:</u>  The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

<u>Stay of Injunction:</u>  In determining whether a stay should be issued pending appeal, this Court balances the traditional factors governing injunctive relief: (1) Whether the moving party has a strong or substantial likelihood of success on the merits; (2) Whether the moving party will suffer irreparable harm if the district court proceedings are not stayed; (3) Whether staying the district court proceedings will substantially injure other interested parties; and (4) Where the public interest lies.  *Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).

1

# STATEMENT OF FACTS

On December 14, 2017, the Court granted Plaintiffs' motion for preliminary injunction and enjoined Defendant Secretary of State "from enforcing Michigan Compiled Laws § 257.321a to suspend the driver's licenses of people unable to pay their traffic debt." (R. 21, Page ID # 268.) On the next day, Defendant filed a notice of appeal of this order. (R. 22.) The appeal will raise the narrow grounds upon which the Court predicated its order: procedural due process for motorists claiming an inability to pay traffic debt. The appeal will also seek review of the Court's denial of Defendant's jurisdictional and abstention arguments.[2]

Expedited review on an emergency basis is appropriate for several reasons. Time is of the essence because complying with the Court's

---

[2] The Court appeared to agree that Plaintiff Fowler lacks standing because she is ineligible for restoration of Michigan driving privileges due to her suspended status in Georgia. (R. 21, Page ID # 248.) As noted below, it now appears that Ms. Harris lacks standing as well, because during the pendency of this lawsuit she has committed other motor vehicle code violations that present independent and adequate grounds for suspending her license. Those infractions include no proof of insurance, registration and/or plate violation, and driving while unlicensed. In addition, at least one suspension was for failure to appear (as opposed to failure to pay), which may also place her situation outside the scope of this Court's injunction order. (*See* Harris Updated Driving Record, Def.'s Ex. 1.)

2

order is complex and expensive. Complying with the order will require monumental coordination with the many trial courts that process traffic violations and send suspension notices to Defendant – over 100 trial and municipal courts under 57 circuit courts in 83 counties. Depending upon the scope of the order, many thousands of motorists will be implicated. Michigan has about 7.2 million licensed drivers. As of October 1, 2017, there were 4.5 million failure to appear in court or failure to comply with judgment suspensions on the state system. Those suspensions are associated with approximately 870,000 drivers. In fiscal year 2017, Defendant received over 590,000 such suspensions. This volume represents a rate of about 2,400 suspension notices every day. (Gaspar Aff., Def.'s Ex. 2.)

Furthermore, the injunctive remedy that is ordered is multi-faceted and not entirely within Defendant's control. Michigan has an automated, computerized system running on antiquated code and it will take months to implement changes to the code. Defendant must rely on inputs provided by the various trial courts, and their coordination is also needed on the back end when suspensions are lifted. (Gaspar Aff., Def.'s Ex. 2.)

3

Accordingly, immediate expedited consideration is appropriate under these circumstances.  Defendant now turns to the merits of this request to stay the injunctive order pending appeal.

## ARGUMENT

### I. The preliminary injunction should be stayed because it is procedurally improper under the court rules and failed to provide due process.

This Court may stay an injunction pending an appeal.  Fed. R. Civ. P. 62(c).  In determining whether such a stay should be issued, one factor is whether the party has a substantial likelihood of success on the merits of the appeal.  *See Baker v. Adams Cnty./Oh. Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).

Here, Defendant has a substantial likelihood of success on appeal because the preliminary injunction is procedurally improper. Additionally, the Court relied sua sponte on extrinsic evidence that was not part of the record briefed by the parties.  Under the circumstances, Defendant was not afforded a fair and meaningful opportunity to develop and argue the record relied upon by the Court.

4

### A.    The preliminary injunction was issued in violation of federal court rules.

The federal rules contain specific and mandatory requirements for the issuance of a preliminary injunction.  This Court's injunction violates two threshold requirements.  First, the rules mandate that, "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  The specificity mandated by the rules is not to be taken lightly, "[t]he judicial contempt power is a potent weapon.  When it is founded upon a decree too vague to be understood, it can be a deadly one."  *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967).  To avoid that end, the mandates are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

The Court's order enjoins Defendant Secretary of State "from *enforcing* Michigan Compiled Laws § 257.321a *to suspend* the driver's

5

licenses of *people unable to pay* their *traffic debt*." (R. 21, Page ID # 268, emphasis added.) While the statute is specifically identified, the operative language fails to specifically state the terms of the injunction or describe in reasonable detail the act or acts restrained or required. This lack of specificity also creates practical issues for Defendant to understand the scope of the order and how to comply with it.

Each italicized portion of the operative language raises questions:

• **"*enforcing*" and "*to suspend*"** – The specific manner of enforcement is not explained, and it is unclear if the order contemplates new suspensions (i.e. December 14, 2017 and later) or all suspensions (retroactive as well).

• **"*people*"** – The scope of this term is expansive and overly broad, particularly at this early juncture given that the parties have not briefed class certification and the Court, having not ruled on the matter, has granted relief to all persons who might be members of the putative, not yet litigated class – at a minimum, the Court should limit its order to parties before the Court with standing.

• **"*unable to pay*"** – The order provides no guidance regarding what people are unable to pay and by what standards that inability should be decided and by whom; in the current system, Defendant has no way of categorizing which persons reported by trial courts as failing to pay are willfully so, unable to pay, or otherwise; nor does the current reporting system indicate which persons failed to comply with alternative accommodations such as payment plans, wage assignment, and community service. As trial courts already provide due process related to the ability to comply with the court's judgment, Defendant is unclear how to insert an additional step without abandoning a long-standing, effective, and efficient computer reporting system used between

6

the trial courts and Defendant.  Additionally, Mich. Comp. Laws §
257.321a has 16 sections dealing with various license sanctions,
requiring Defendant to review how "unable to pay" may or may
not impact the enforcement of the various sections of the act.

• **"*traffic debt*"** – Page 1 of the order provides some guidance
regarding this term; however, its inclusion in the operative
language of the order has the effect of requiring Defendant to
speculate on what provisions of Mich. Comp. Laws § 257.31a can
be considered traffic debt, as well as excluding from the injunction
persons whose licenses were suspended for failure to appear in
court, as those persons as a matter of law are not in the same
position as those who did go to court, had access to alternative
payment options, and failed to pay.

As written, the injunctive order creates uncertainty and confusion, and
thereby the possibility of a contempt citation based on a decree too
vague to be understood.

Second, in addition to violating the specificity requirements of the
federal rules, the Court's injunction also violates the rule regarding
security.  "The trial court may issue a preliminary injunction or a
temporary restraining order only if the movant gives security in an
amount that the court considers proper to pay the costs and damages
sustained by any party found to have been wrongfully enjoined or
restrained."  Fed. R. Civ. P. 65 (c).  Here, the Court did not order, waive
or address security.  In fact, the order granting the preliminary
injunction included no language at all relating to security.  Because the

7

form of the injunctive order is in violation of the mandates of the court rules, it is procedurally improper, and for this reason alone, a stay should be granted. Upon information and belief, an injunction with statewide effect would require substantial security to cover the cost of implementation, lost revenue, and other consequential damages expected to be wrongfully incurred. (Gaspar Aff., Def.'s Ex. 2.)

## B.    The preliminary injunction was issued in violation of due process.

In addition to the form of the injunctive order itself being improper, the Court relied on extrinsic evidence that was not part of the record that the parties briefed. Specifically, the Court sought on-line versions of court forms that may have been used in 43rd District Court in Ferndale, where Plaintiff Harris received her traffic citation. (R. 21, Page ID ## 262-264.) The Court also "reviewed the websites of the other Michigan district court where Ms. Fowler or Ms. Harris were cited for failing to appear in response to traffic citations." (*Id.,* Page ID # 264, n.8.) The Court hinged its procedural due process analysis upon what these court forms said or failed to say. (*Id.,* Page ID ## 262-265.)

This approach was improper. Courts have required "a fair opportunity and a meaningful hearing [for parties] to present their

8

differing versions of [the] facts before a preliminary injunction may be granted." *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005). "A judge must not independently investigate facts in a case and must consider only the evidence presented." Kathleen Kerr, *Ex Parte Communications in A Time of Terror*, 18 Geo. J. Leg. Ethics 551, 552 (2005) (quoting MODEL CODE OF JUDICIAL CONDUCT Canon 3(B)(7) cmt. (2003)).

The briefing before the Court relied upon Plaintiffs' complaint and their declarations, as well as other documents attached to the parties' pleadings. Defendant specifically argued that, absent a showing that Plaintiffs meaningfully engaged the state trial courts and the process afforded to them there, there was no basis for federal intervention here.

Additionally, Defendant did not understand Plaintiffs' pleadings to allege that defects in court forms were the basis of any constitutional claim. Were that the case, Defendant would have had the opportunity to explain that the Department of State does not craft or issue state court notices to motorists. That function is within the purview of the trial courts themselves and the State Court Administrative Office (SCAO). Those entities are not parties before this Court and thus not

subject to the injunction order.  Fed. R. Civ. P. 45(d)(2).  Relatedly, any

violation arising from court forms is simply not the responsibility of

Defendant.  The same would be true for any remedy that might be

crafted by modifying SCAO approved court forms for traffic cases.

Under the circumstances, the injunction order was decided and entered

in a manner that did not afford adequate due process to Defendant.

II.    **The preliminary injunction issued by the Court should be stayed because it is substantively improper where Defendant, not Plaintiffs, will suffer irreparable harm, Plaintiffs are not likely to succeed on the merits, and the public interest favors maintaining the status quo.**

As mentioned, this Court may stay an injunction pending an

appeal.  Fed. R. Civ. P. 62(c).  In determining whether such a stay

should be issued, this Court balances the traditional factors governing

injunctive relief:

1.    Whether the moving party has a strong or substantial likelihood of success on the merits;
2.    Whether the moving party will suffer irreparable harm if the district court proceedings are not stayed;
3.    Whether staying the district court proceedings will substantially injure other interested parties; and
4.    Where the public interest lies.

*Baker*, 310 F.3d at 928.  The factors are to be balanced, and the

"strength of the likelihood of success on the merits that needs to be

10

demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue." *Id.*

## A. Defendant has a strong likelihood of success on the merits.

For the reasons already stated, the Court relied on improper record evidence and should not have attributed the content of state court forms to Defendant. Additionally, the Court's procedural due process analysis is legally flawed. Of particular note is the Court's failure to cite or apply binding law that adequate post-deprivation remedies are all that is required for revocation of driving license privileges. (*See* R. 11, Def.'s Resp. to Prel. Inj. Mot., Page ID ## 132-34.) Hardship cases were specifically considered in this context in *Dixon v. Love*, 431 U.S. 105 (1997). Contrary to this Court's analysis, the U.S. Supreme Court "conclude[d] that requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations." *Id.* at 114. This Court's procedural due process analysis failed to consider *Dixon*, or the adequacy of post-deprivation remedies. On that basis alone, Defendant is likely to succeed on the merits of its appeal.

11

Additionally, the Court's factual basis was shaky for determining that Defendant did not provide adequate notice and opportunity to be heard to Plaintiffs.  The operative court notices were surmised by the Court based on an internet search and in any event not within the control of Defendant.  The notices that Defendant does control, (*see*, *e.g.*, R. 20-1, Page ID ## 224, 226), are the same for everyone depending on the circumstances and they are provided on both a pre and post-suspension basis.  Defendant's notices specifically refer the motorist to the local trial court involved, with the proviso that the local court may "require you to appear *or* pay fines and costs."  (*Id.*, emphasis added.)[3]

While one might quibble with the content of Defendant's notices, it cannot be denied that notice and an opportunity to be heard in local court were plainly provided before and after suspensions were initiated.[4]  In addition, this Court's order did not cite any binding

---

[3] In fact, the Harris's trial court sets show cause hearings for failure to comply.  At such a hearing, payment plans, wage assignments or community service are available to avoid being reported as failing to comply.  (Carroll Aff., Def.'s Ex. 3.)  The declaration Harris submitted to this Court failed to advise what process she actually used or could have used in state court.

[4] Plaintiffs both had their licenses suspended at one time or another for failing to appear in court.  Failure to provide procedural due process is

12

federal law requiring specific notice to motorists unable to pay that they can request an ability to pay hearing.  The lack of any such case law is not surprising insofar as settled law already says that adequate post-deprivation remedies are all that is required to meet due process requirements in the highly regulated context of suspending driving privileges.  Accordingly, Defendant is likely to succeed on the merits.[5]

## B. Defendant and third parties, not Plaintiffs, will suffer irreparable harm absent a stay of proceedings.

"A specific finding of irreparable injury to the movants is the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction.  The absence of irreparable injury must end this Court's inquiry." *MetroBanc v. Federal  Home Loan Bank Bd*., 666 F. Supp. 981, 984 (E.D. Mich. 1987) (internal  citations omitted).  Defendant and third parties will suffer irreparable harm without a stay.

---

an untenable proposition when a motorist does not afford herself the opportunity for the very due process sought here.

[5] Additionally, and without restating them here, Defendant is also likely to prevail on the merits of the jurisdictional arguments. Defendant adopts and incorporates by reference those arguments from prior pleadings.  Fed. R. Civ. P. 10(c).

"'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)); *see also Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.").

Further, this injunction intrudes into the regulation of Michigan's driver's licenses and roadways, as well as administration of its trial courts. Here, the injunction represents a deep, unwarranted intrusion into Michigan's sovereignty and its traditional police powers. The intrusion will be costly. Defendant and Michigan trial courts rely on automated computer systems that use antiquated code that will take months and many labor hours to alter Defendant's and the trial court's systems to effectuate this Court's order.

More telling is the impact on courts, local units of government, and the State for lost revenue as, without a defined standard for "unable to pay," 870,000 people that have not complied with a valid

14

state court order could now potentially argue they can avoid their "traffic debt."

Third parties not named in this lawsuit will also suffer irreparable harm. As the order extends beyond the named plaintiffs, 870,000 drivers could potentially seek a determination on whether they are "unable to pay" their traffic debt. As that determination to remove a suspension lies with the Michigan trial courts under Mich. Comp. Laws § 257.321a, courts throughout Michigan may be required to expend significant resources to review driver's files. If the injunctive order is vacated or reversed, those efforts would then need to be undone.

Further, individual drivers will be irreparably harmed. A driver that has been unable to lawfully drive based on failing to comply with a valid court judgment has, by definition, limited resources. Those drivers may then have their suspensions lifted, causing them in reliance on this Court's order to purchase a vehicle and the required insurance on the belief that they can now drive legally. If this Court or a higher court modify or set aside the preliminary injunction, those drivers will have invested significant resources into a diminishing asset that they cannot use. In myriad other ways, drivers with limited resources would

15

otherwise rely to their detriment on the order.  An immediate stay will mitigate the potential for any detrimental reliance by third parties on the preliminary injunction.  Extending the status quo pending appeal will in the end better serve all interested parties, as time is needed to settle with finality the legal issues raised in the injunction.

### C.    Plaintiffs have not suffered an irreparable injury because they both lack standing and, in any event, have adequate post-deprivation remedies.

Fowler has suffered no irreparable injury, because her suspension status in Georgia means she "did not have a Michigan license suspended according to the scheme now challenged."  (R. 21, Page ID # 248.)  The same is true for Harris, as she committed infractions during the pendency of this lawsuit (filed on May 4, 2017) that operate to deprive her of Article III standing.[6]  Those additional infractions remove her situation from the terms of the Court's injunctive order,

---

[6] Subject matter jurisdiction, including standing, may be raised as a defense or by the court itself at any time.  Fed. R. Civ. P. 12(h)(3); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Zurich Ins. Co. v. Logitrans, Inc.* 297 F.3d 528 (6th Cir. 2002).

because now there are independent grounds for suspending her driving privileges.

Under Michigan law, operating a motor vehicle while on suspended status is itself a suspension-worthy offense.  Mich. Comp. Laws § 257.904(11).  No proof of insurance and no registration and/or plate violation can also be serious offenses with consequences leading to suspension.  *See* Mich. Comp. Laws § 257.328(1) & (4).  Accordingly, and like Fowler, Harris can no longer benefit from this Court's injunction order.  She lacks standing because she does "not have a Michigan license suspended according to the scheme now challenged."  (R. 21, Page ID # 248.)  Because neither Plaintiff presents a live, concrete injury that can be redressed by the injunctive relief granted, the Court should vacate its order and dismiss this case with prejudice.

In addition, records from Ferndale District Court indicate that Harris in fact received the process that was due before her license was suspended.  That court has a practice of working with motorists on payment plans, wage assignments, or community service as alternatives to straight payment of fines and costs.  The court practice is to not report a failure to comply with a judgment to Defendant so long

17

as the individual continues to make good faith effort to pay fines, a process that can begin with a payment as little as a single dollar. (Carroll Aff, Def.'s Ex. 3.)  Harris paid off one ticket and then broke off communication with the court on another, which lead to her being reported as failing to comply with a judgment and in turn caused her license to be suspended.  (*Id.*)  Under the circumstances, her claims are moot and she is not entitled to duplicative injunctive relief.

Statewide, similar procedural controls are already in place.  In 2010, SCAO adopted Administrative Order No. 2010-1 to "establish and require compliance with court collections program and reporting requirements."  (AO No. 2010-1, Def.'s Ex. 4.)[7]  In addition, SCAO has articulated a set of ten components (seven required and three optional) that provide a panoply of procedural safeguards for persons in the court system claiming an inability to pay.  (Court Collections Programs Components and Details, Def.'s Ex. 5.)[8]  These safeguards include show

---

[7] Also available at the following link: http://courts.mi.gov/Courts/MichiganSupremeCourt/rules/Documents/Administrative%20Orders.pdf (last visited December 18, 2017).

[8] Also available at the following link: http://courts.mi.gov/Administration/SCAO/OfficesPrograms/Documents/

cause hearings, payment plans, wage assignments, and community service alternatives. (*Id.* at Components 3-6 & 8.)

Alternatively, and for the reasons briefed here and in previous pleadings, Plaintiffs both have license suspensions for failing to appear in court. How are Plaintiffs owed an additional procedural due process step when both chose not to participate in the very process that already provides the relief this order would impose?

Plaintiffs also have adequate post-deprivation remedies that they can pursue at their option. Their decision to decline to do so cannot have the effect of creating a procedural due process violation on the part of Defendant. Any injury suffered can be addressed on a post-deprivation basis. The Court should therefore stay its injunction order pending appeal.

---

collections/CollectionsComponentsAndDetails.pdf (last visited December 18, 2017).

## CONCLUSION AND RELIEF REQUESTED

Defendant respectfully requests that the Court:

(1) grant immediate, expedited consideration,

(2) stay the December 14, 2017 injunction order pending appeal,

(3) dismiss all claims because Plaintiffs lack standing, and

(4) grant any other appropriate relief to Defendant.

Respectfully submitted,

BILL SCHUETTE
Attorney General

*/s/ John G. Fedynsky*
John G. Fedynsky (P65232)
Assistant Attorney General
Attorney for Defendant
Civil Litigation, Employment &
Elections Division
G. Mennen Williams Bldg., 5th Fl.
525 W. Ottawa St., P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
fedynskyj@michigan.gov
(P65232)

Dated:  December 19, 2017

20

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on December 19, 2017, I electronically filed

the above document(s) with the Clerk of the Court using the ECF

System, which will provide electronic copies to counsel of record.

*/s/ John G. Fedynsky*
John G. Fedynsky (P65232)
Assistant Attorney General
Attorney for Defendant
Civil Litigation, Employment &
Elections Division
G. Mennen Williams Bldg., 5th Fl.
525 W. Ottawa St., P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
fedynskyj@michigan.gov
(P65232)

21