UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIAN FOWLER and
KITIA HARRIS, on behalf of themselves
and others similarly situated,

       Plaintiffs,                              Civil Case No. 17-11441
                                                  Honorable Linda V. Parker

v.

RUTH JOHNSON, in her official
capacity as Secretary of State of the
Michigan Department of State,

       Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR STAY PENDING APPEAL

This is an action challenging Defendant's practice, pursuant to Michigan Compiled Laws § 257.321a, of suspending the driver's licenses of individuals who fail to pay court-ordered fines, costs, fees and assessments resulting from traffic violations ("traffic debt"). On December 14, 2017, this Court entered an opinion and order enjoining Defendant "from enforcing … § 257.321a to suspend the driver's licenses of people unable to pay their traffic debt." (Op. & Order at 34, ECF No. 21 at Pg ID 268.) Defendant filed an appeal of the Court's decision and, on December 19, 2017, moved for a stay of the injunction pending appeal. (ECF

No. 25.) Plaintiffs filed a response to Defendant's motion on December 20, 2017. (ECF No. 27.) Defendant filed a reply brief the same day. (ECF No. 28.)

The Federal Rules of Civil Procedure grant district courts the power to stay an injunction pending appeal:

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. …

Fed. R. Civ. P. 62(c). In deciding whether to issue a stay pursuant to Rule 62(c), the court must consider the same factors analyzed when issuing injunctive relief:

> "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."

*SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (per curiam) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id*. The moving party has the burden of demonstrating entitlement to a stay. *Id*. (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)).

With regard to the likelihood of reversal, Defendant argues that "the preliminary injunction is procedurally improper." (Def.'s Mot. at 4, ECF No. 25 at

Pg ID 278.)  Defendant first argues that the Court failed to fulfill the requirements of Federal Rule of Civil Procedure 65(d)(1).  Specifically, Defendant claims the injunction is ambiguous because it includes the following terms: "enforcing," "to suspend," "people," "unable to pay," and "traffic debt."  (Def.'s Mot. at 607, ECF No. 25 at Pg ID 280-81.)  The terms are not ambiguous.

> Rule 65(d)(1) provides:
>
>> Every order granting an injunction and every restraining order must:
>>
>> (A) state the reasons why [the injunction] issued;
>>
>> (B) state its terms specifically; and
>>
>> (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

Fed. R. Civ. P. 65(d)(1).  Nevertheless, "'the rule does not require the impossible. There is a limit to what words can convey.'"  *Windmill Corp. v. Kelly Foods Corp.*, Nos. 94-5874, 94-5890, 95-5137, 1996 WL 33251, at *6 (6th Cir. Jan. 26, 1996) (unpublished) (quoting *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431 (7th Cir. 1985)).  "Rule 65(d) does not require a torrent of words when more words would not produce enlightenment about what is forbidden.'"  *Id.* at *7 (quoting *Scandia Down*, 772 F.2d at 1432).  Moreover, the words of the injunction must be read in the context of the Court's entire decision and, when that is done, they are not ambiguous and the injunction satisfies Rule 65(d)(1)'s requirements.

3

The Court sees no confusion as to what it was enjoining—that being, Defendant's suspension of Michigan driver's licenses for failure to pay traffic debt[1] when the license holder is unable to pay that debt. The Court said nothing in its decision about reinstating driver's licenses previously revoked. In other words, *the Court's December 14, 2017 decision does not require Defendant to restore anyone's license at this point*. In fact, this was not relief sought by Plaintiffs in their motion for preliminary injunction (unlike the plaintiffs in the Tennessee license revocation case cited in the decision). *See Robinson v. Purkey*, No. 3:17-cv-1263, 2017 WL 4418134 (M.D. Tenn. Oct. 5, 2017).

Defendant next argues that the Court's injunction violates the security requirement in Rule 65(c):

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Fed. R. Civ. 65(c). The Court did not address security in its decision; but, Defendant never asked the Court to impose a bond in response to Plaintiffs' preliminary injunction motion. Several courts have found no error in a district

---

[1] As stated in the Court's decision, it used the term "traffic debt" to refer to "court-ordered fines, costs, fees and assessments resulting from traffic violations[.]" (*See* Op. & Order at 1, ECF No. 21 at Pg ID 235.) Thus, the Court clearly was not barring Defendant from enforcing Section 257.321a to suspend licenses for other bases set forth in the statute.

4

court's failure to impose a bond where it never was requested. *See, e.g., Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882-83 (9th Cir. 2003); *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 895-96 (1st Cir. 1988); *Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976); *Weaver v. Sch. Bd. of Leon Cnty.*, No. 00-00091-cv-ws, 2006 WL 858510, at *2 n.3 (11th Cir. April 4, 2006) (unpublished); *see also Laster v. District of Columbia*, 439 F. Supp. 2d 93, 99 n.7 (D.D.C. 2006) (declining to order the plaintiffs to post a bond in part because the defendants never requested one); *Scholle Corp. v. Rapak LLC*, No. 13 c 397, 2014 WL 3687734, at *2 (N.D. Ill. July 24, 2014) (unpublished) ("[Defendant] is in no position to complain about the opportunity to present its views on the bond amount after this Court enjoined it when it failed to raise the issue on its own prior to the entry of the preliminary injunction.").

In any event, despite Rule 65(c)'s apparent mandatory language, "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing cases). Had the Court addressed security in its decision, it would have held that no bond should be required. The Court reaches this conclusion because Plaintiffs claim to be indigent and to have suffered injuries because of their lack of financial resources. Further, the interests at stake are substantial because the loss of a driver's license, particularly in a state like

5

Michigan lacking an efficient and extensive public transportation system, hinders a person's ability to travel and earn a living. To the extent the Court erred in not making that determination in its preliminary injunction decision, *see Roth v. Bank of Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), it amends the decision to do so now.

Defendant also contends that the preliminary injunction was issued in violation of due process because the Court relied on evidence not presented by the parties, but obtained from Michigan state court websites. However, the Court was permitted to "judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), and this includes information posted on an official government website. *Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself."); *see also United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 971-72 (2003) (citations omitted) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.' … This includes public records and government documents available from reliable sources on the Internet."); *Lamay v. Balcarel*, No. 2:13-CV-10482, 2013 WL 4053203, at *3 n. 5 (E.D. Mich. Aug.12, 2013) (unpublished) ("Public

6

records and government documents, including those available from reliable resources on the Internet, are subject to judicial notice"); *Hames v. Sepanek*, No. 0:13-111, 2013 WL 5235567, at *1 n. 1 (E.D. Ky. Sept.17, 2013) (unpublished) (finding that "[r]ecords and information located on government websites are self-authenticating under Fed. R. Evid. 902" and thus can be judicially noticed).

Defendant also believes, however, that her due process rights were violated because the Court, when citing to this evidence, relied on a different basis to grant injunctive relief than was argued by Plaintiffs and Defendant, therefore, did not have the opportunity to address it before the Court's ruling. (*See* Def.'s Mot. at 8-10, ECF No. 25 at Pg ID 282-84.) The Court does not believe that Defendant was blindsided by this issue and not provided an opportunity to respond to it.

The crux of Plaintiffs' case always has been that Michigan drivers lacking the means to pay their traffic debt are denied their due process right to an ability-to-pay hearing before their licenses are suspended. (*See, e.g.*, Compl. ¶¶ 11, 157, 159, ECF No. 1 at Pg ID 3, 25.) Defendant has argued in response that Plaintiffs could have raised their indigency and sought an alternative to full payment of their traffic debt by appearing in state court in response to their traffic citations. Defense counsel reiterated this argument at oral argument in response to the assertion by Plaintiff's counsel that traffic citations inform drivers only that they can contest liability at a hearing and, if they do not prevail, must then pay the full

7

amount of their traffic debt. Plaintiffs referred to Ms. Fowler's affidavit to support this assertion.

The Court therefore spent significant time at oral argument seeking information as to what ticketed motorists are told and when. The Court's questions should have made clear that it was concerned about if and how drivers were informed that they could raise their indigency before their licenses were suspended, as defense counsel asserted they could.[2] Despite making this argument, defense counsel conceded that he really was not aware if or how this opportunity was conveyed to Michigan drivers as the traffic hearings are governed by local

---

[2] As the Court's December 14, 2017 decision hopefully made clear, the Court believes that due process requires not only an opportunity to be heard but knowledge of that opportunity. Therefore, even if the State Court Administrative Office has created an administrative order establishing and requiring compliance with collection programs and the State's traffic courts offer alternatives to paying traffic debt in full (*see* Def.'s Mot., Ex. 4, ECF No. 25-5), motorists' due process rights still may be violated if they are never informed that they can seek such relief at a hearing. Plaintiffs established that motorists are informed only that they can challenge their liability at the traffic court hearing and must pay their traffic debt in full if they are liable. Defendant has not presented evidence to show otherwise. In the affidavit Defendant offers from Linda Carroll, Court Administrator for the 43rd District Court, Ms. Carroll states that payment extensions are given only to a defendant "that ask[s]" and then the extension is only for two weeks. (Def.'s Mot., Ex. 3 ¶ 4, ECF No. 25-4 at Pg ID 307.) To receive a longer extension, defendants usually must pay half of their debts. (*Id.*) According to Ms. Carroll, the court informs individuals of their right to a hearing to raise their ability to pay only after they fail to comply with a judgment. (*Id.* ¶ 8, Pg ID 308.) Ms. Carroll states that the court sets a show cause hearing where the court will determine if a payment plan, wage assignment or community service is appropriate; however, there is no evidence that individuals are told beforehand that this will happen at the hearing. (*Id.* ¶ 9, Pg ID 308.)

8

state courts and not Defendant. Defense counsel could have requested the opportunity to supplement the record at that time to show that motorists are informed of the opportunity to raise their inability to pay and seek alternative means of paying their traffic if they come to court in response to a traffic citation. Nevertheless, counsel did not do so before the Court issued its preliminary injunction decision.[3]

Defendant argues in her motion to stay that if she had known that the defects in the court forms were the basis of any constitutional claim, she would have taken the opportunity to explain that she is not responsible for crafting or issuing state court notices to motorists. (Def.'s Mot. at 9, ECF No. 25 at Pg ID 283.) The defects in the notices are not the basis of Plaintiffs' constitutional claim, however. Rather, the basis is the lack of an opportunity to be heard regarding inability to pay before one's license is suspended. The notices are relevant only with respect to defense counsel's assertion that Plaintiffs in fact were informed of and would have been afforded that opportunity if they had appeared in state court.

---

[3] Defendant attaches affidavits in support of her motion to stay to show that indigency and alternatives to full payment are considered by the state traffic courts. This evidence, however, was not part of the record when the Court decided to issue the preliminary injunction and Defendant did not move for reconsideration based on this new evidence before filing her appeal. Moreover, for the reasons stated in the previous footnote, the evidence does not show that individuals are informed that these matters will be considered.

Notably, Defendant asserts on more than one occasion in her motion for a stay that the operative state court notices are not within her control. Defense counsel made the same point at oral argument. This may be true. Nevertheless, Defendant has relied on these notices to argue that motorists are adequately informed of the opportunity to have their indigency considered before their licenses are revoked. If Defendant is delegating her constitutional obligation to provide due process to Michigan motorists to the state courts, she bears the responsibility for guaranteeing that the obligation is satisfied.[4]

Turning to the second and last factors the Court must consider in deciding whether a stay is warranted, Defendant argues that she and third parties will suffer irreparable harm absent a stay. Defendant first insists: "'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" (Def.'s Mot. at 14, ECF No. 25 at Pg ID 288, quoting *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (additional quotation marks and citation omitted).) Defendant's counsel, the Michigan Department of Attorney General, made the same argument in a previous case before this Court, to which the Court responded:

---

[4] Notably, in Section 257.321a, the Michigan legislature gave only Defendant the power to suspend a motorist's license for *inter alia* failure to "pay[] all fines, costs, fees and assessments" related to a traffic violation. *See* Mich. Comp. Laws § 257.321a(2).

> Enjoining a State from enforcing its laws cannot always amount to irreparable harm. If a statute is unconstitutional, how is the State harmed by not being able to enforce it? *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("[T]here can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute[.]") (citing *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).

*Michigan State AFL-CIO v. Johnson*, No. 16-11454, 2016 WL 6405831, at *2 (E.D. Mich. Oct. 31, 2016), *aff'd in part and rev'd in part*, 847 F.3d 800 (6th Cir. 2017). The same rationale undermines Defendant's second argument that the injunction intrudes into the State's regulation of driver's licenses and roadways, as well as administration of its trial courts.

Defendant also argues that the State and its local units of government will suffer irreparable harm by the loss of revenue because, without a defined standard for "unable to pay," "870,000 people that have not complied with a valid state court order could now potentially argue they can avoid their 'traffic debt.'" (Def.'s Mot. at 14-15, ECF No. 25 at Pg ID 288-29.) Defendant contends that local court resources also will be taxed when those courts are inundated with drivers "potentially seek[ing] a determination on whether they are 'unable to pay' their traffic debt." (Id. at 15, Pg ID 289.) Moreover, according to Defendant, the Michigan courts will be required to expend significant resources reviewing drivers' files to assess their ability to pay.

11

As the Court's preliminary injunction does not apply retroactively, there is no need at this time for the state to review the files of drivers whose licenses already have been suspended. With respect to the potential for lost revenue and a flood of requests for inability-to-pay hearings, Defendant contends in her motion (and attaches affidavits as proof) that the Michigan courts already have in place a system for assessing motorists' ability to pay and, when the court determines that they cannot pay in full, for directing alternative means of payment (e.g. payment plans or community service). Assuming, as Defendant urges, that motorists already are informed of the opportunity to raise indigency before the State's traffic courts, the preliminary injunction should not cause a flood of requests for ability-to-pay hearings. Because, as Defendant maintains, the local courts already offer alternatives to full payment for indigent offenders, they presumably already have in place a defined standard for evaluating motorists' ability to pay.

Defendant nevertheless maintains in her reply brief that "the system" is not "set up in a manner that allows flipping a switch to stop 'enforcing Michigan Compiled Laws § 257.321a to suspend the driver's licenses of people unable to pay their traffic debt.'" (Def.'s Reply at 2, ECF No. 28 at Pg ID 406, quoting Op. & Order at 34, ECF No. 21 at Pg ID 268.) According to Defendant, "[it] is a months-long disruptive process implicating every trial court in the State[]" and would require "herculean compliance efforts[.]" (*Id.*) As Defendant indicated in

her initial motion, it is the State's trial courts that process traffic violations and send suspension notices.

Yet, as the Court indicated earlier, the legislature granted the power to suspend licenses for failure to pay traffic debt only to Defendant. Defendant therefore must guarantee that individuals receive the process they are due before their licenses are revoked. If Defendant cannot make this happen promptly or without "herculean … efforts", she can simply stop suspending driver's licenses until a system is in place to adequately inform drivers of their opportunity for a pre-revocation ability-to-pay hearing and to afford such a hearing.

Defendant additionally contends that drivers whose licenses have been revoked may be irreparably harmed absent a stay because the injunction may cause them to run out and purchase a vehicle and the required insurance believing they can now drive legally. (Def.'s Mot. at 15, ECF No. 25 at Pg ID 289.) Defendant adds that if the preliminary injunction is modified or set aside, "those drivers will have invested significant resources into a diminishing asset that they cannot use." (*Id*.) Again, the Court's injunction does not require Defendant to reinstate driver's licenses previously suspended at this time. In any event, the scenario Defendant envisions seems implausible as the same motorists lack the finances to pay their traffic debts.

Finally, Defendant argues that Plaintiffs have not suffered irreparable injury because they both lack standing and, in any event, have adequate post-deprivation remedies. This Court already has questioned Ms. Fowler's standing. (Op. and Order at 14, ECF No. 21 at Pg ID 248.) But the Court found that Ms. Harris "appears to be a proper plaintiff [with standing] to present the question of whether it is constitutional for Michigan to suspend a driver's license for failure to pay court debts the licensee cannot afford." (*Id.*) Defendant now claims in her motion to stay that Ms. Harris has committed additional infractions during the pendency of this lawsuit that operate to deprive her of Article III standing. Defendant also maintains that records from the district court in Ferndale indicate that "[Ms.] Harris in fact received the process that was due before her license was suspended." (*Id.* at 17, Pg ID 291.)

Defendant did not raise these arguments or present this evidence before the Court issued its preliminary injunction decision, however. In any event, Defendant presents insufficient information for the Court to conclude at this juncture that Ms. Harris lacks standing or that she was informed of the opportunity to raise her indigency and seek an alternative to full payment of her traffic debt in the Ferndale court. *See supra* at n. 2.

For the above reasons, the Court concludes that Defendant does not demonstrate her entitlement to a stay of the preliminary injunction order pending appeal.

Accordingly,

**IT IS ORDERED** that Defendant's motion for stay pending appeal (ECF No. 25) is **DENIED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: December 21, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 21, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager