UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIAN FOWLER and KITIA HARRIS,

                    Plaintiffs,

                                      Civil Case No. 17-11441
v.                                  Honorable Linda V. Parker

RUTH JOHNSON, Michigan Secretary
of State,

                    Defendant.

_____/

## OPINION AND ORDER

       This is a putative class action lawsuit challenging Defendant's practice,

pursuant to Michigan Compiled Laws § 257.321a, of suspending the driver's licenses

of individuals who fail to pay court-ordered fines, costs, fees and assessments

resulting from traffic violations. The matter presently is before the Court on remand

from the Sixth Circuit Court of Appeals to address Plaintiffs' standing. *See* Order,

*Fowler v. Johnson*, Case Nos. 17-2504/18-1089 (6th Cir. Feb. 7, 2018).

## Factual Background

       Plaintiffs Adrian Fowler and Kitia Harris are Michigan residents who claim to

have had their driver's licenses suspended pursuant to Michigan Compiled Laws §

257.321a. While living in Georgia from 2008 to 2012, Ms. Fowler was issued three

tickets for civil traffic infractions, which she was not able to pay. (Fowler Decl. ¶ 4;

ECF No. 42-2 at Pg ID 676.) When she moved back to Michigan in 2012, Ms. Fowler

tried to renew her Michigan driver's license and was informed that it was suspended because she had not paid her Georgia court debts. (*Id.* ¶ 5.) Defendant explains that Michigan law precludes the Secretary of State from issuing a driver's license to someone whose license is revoked or suspended in another state. *See* Mich. Comp. Laws § 257.303(1). According to Defendant, Georgia suspended Ms. Fowler's license for nonpayment of court debts.

In Winter 2013, a police officer stopped Ms. Fowler for speeding in Ferndale, Michigan, and issued her a citation for speeding and driving while license suspended ("DWLS"). (Fowler Decl. ¶ 6, ECF No. 42-2 at Pg ID 676.) The total cost of the ticket was almost $600. (*Id.*) According to Ms. Fowler, she subsequently went to the Ferndale courthouse to report that she was unable to pay the $600 and was told to return in three weeks with the full amount or a warrant would be issued for her arrest. (*Id.* ¶ 7.) Ms. Fowler has been unable to pay the amount owed. (*Id.* ¶ 11.)

In October 2016, a Ferndale police officer stopped Ms. Harris and issued her a ticket for "impeding traffic." (Harris Decl. ¶ 7, ECF No. 42-4 at Pg ID 682.) According to Ms. Harris, the officer instructed her to call a number to see how much she owed for the ticket. (*Id.*) Ms. Harris called the number a couple of days later and was told the cost was $150. (*Id.* ¶ 8.) Unable to pay that amount, Ms. Harris asked the person on the phone if she could be placed on a payment plan. (*Id.* ¶ 8.) According to Ms. Harris, she was told no and that she had to pay the amount in full.

(*Id.*)  Ms. Harris was further informed that if she waited too long to pay, her license would be suspended.  (*Id.*)  Ms. Harris avers that she was never told to come to court to discuss a payment plan or provided other alternatives to paying the fine in full.  (*Id.* ¶ 9.)

About a month later, Ms. Harris received a notice in the mail reflecting that the amount she owed had increased and that her license had been suspended because of her failure to pay the fine.  (*Id.* ¶ 10.)  Ms. Harris claims that she received three additional suspensions of her license for failure to pay fines in November 2017.  (*Id.* ¶ 12.)

Defendant informs the Court that these additional suspensions were not due to Ms. Harris' failure to pay traffic fines, but rather her failure to appear in court in response to traffic citations.  (*See* ECF No. 25-2 at Pg ID 300-01.)  These citations were accumulated after this lawsuit was filed.  In the Sixth Circuit and here, Defendant has argued that these additional suspensions for failure to appear—rather than failure to pay—"remove [Ms. Harris'] situation from the terms of [this Court's] injunctive order because now there are independent grounds for suspending her driving privileges."  (*See, e.g.*, ECF No. 25 at Pg ID 290-91.)

Defendant also has asserted that when Ms. Harris contacted the Ferndale court regarding her October 2016 citation, she in fact received an extension to make a payment by November 7, 2016.  Defendant claims Ms. Harris also was informed that

any payment would result in another extension on the balance and that her license would not be suspended. (*See* ECF No. 33-5.) Defendant relates that Ms. Harris failed to make any payment, which resulted in a default judgment on November 14, 2016. According to Defendant, if Ms. Harris had again contacted the court, the court would have made a payment arrangement with her to avoid the suspension of her license. (*Id.*)

Defendant also offers the affidavit of Linda Carroll, Court Administrator for the Ferndale court, who provides:

> For civil infractions, defendant[s] that ask are given a payment extension for 2 weeks. They are told that if they bring in a payment, preferably half, we will grant another 2 week extension. If they are unable to pay in full at that time, we will give them another extension. We will give an extension until they are paid in full. Very often, we will give the defendant several extensions. Anyone that calls in and makes any type of payment will always be granted an extension.

(*See* Carroll Aff. ¶ 4, ECF No. 25-4 at Pg ID 307.) Ms. Carroll further attests that the court allows defendants to enter into payment plans for fees that cannot be waived and that such plans can be started for as little as a dollar. (*Id.* ¶¶ 6-7, Pg ID 308.) She further states that individuals are informed that they can raise their inability to pay at a show cause hearing. (*Id.* ¶ 8, Pg ID 308.)

## Procedural Background

On the day they initiated this action, Plaintiffs also filed a motion for preliminary injunction to enjoin Defendant from suspending the driver's licenses of

individuals unable to pay their traffic debt.  Concluding that Plaintiffs are likely to

prevail on their claim that Defendant violated their procedural due process rights by

suspending their driver's licenses without first affording them an "ability to pay

hearing", the Court granted Plaintiff's motion and entered a preliminary injunction on

December 14, 2017.[1]  (*See* ECF No. 21.)  Specifically, the Court ordered "that

Defendant is enjoined from enforcing Michigan Compiled Laws § 257.321a to

suspend the driver's licenses of people unable to pay their traffic debt."  (*Id.* at Pg ID

268.)

Defendant appealed and asked the Sixth Circuit Court of Appeals to stay the

injunction.  On December 28, 2017, the Sixth Circuit issued an order stating that

Defendant had "not demonstrated a strong likelihood of success on the merits of its

challenge to the district court's ruling on procedural due process."  (ECF No. 30 at Pg

ID 450.)  Nevertheless, the court of appeals stayed the injunction for thirty days and

remanded the matter "for the limited purpose of modifying the injunctive relief

granted … to provide direction to the State as to the type of process required to

comply with the court's order."  (*Id.* at 450-51.)

---

[1] In its December 14, 2017 decision, the Court concluded that Plaintiffs are not likely
to prevail on the claims in their Complaint alleging other constitutional violations.
(*See* ECF No. 21.)

5

In response to the Sixth Circuit's remand order, this Court issued an order on January 5, 2018, clarifying its injunction. (ECF No. 31.) The order stated:

> To be clear, in its December 14, 2017 decision, this Court intended to enjoin Defendant from suspending any further driver's licenses of individuals *because* of their inability to pay their traffic debt <u>until</u> the State: (1) provides drivers a hearing where they have the opportunity to demonstrate their inability to pay; (2) provides reasonable notice to drivers of the hearing; **and** (3) institutes alternatives to full payment for those unable to pay (e.g., realistic payment plans or volunteer service).

(*Id*. at Pg ID 452-53, emphasis in original.) The Court further scheduled a hearing to address any questions or concerns the parties may have had concerning the intended modification to the preliminary injunction order. (*Id*. at Pg ID 453.)

Prior to the hearing, Defendant filed a supplemental brief presenting evidence to convince the Court that Plaintiffs in fact "were provided well established and readily available procedural due process in state court that they willfully ignored" and that "[t]heir suspensions resulted from conscious failure to appear as required by law, and not the alleged inability to pay." (ECF No. 33 at Pg ID 465.) Defendant also presented evidence of Ms. Harris' November 2017 infractions and suspensions for failure to appear, arguing that these infractions deprived her of Article III standing.

This Court ultimately concluded that the Sixth Circuit's remand order did not permit it to consider new evidence and revisit the merits of Plaintiffs' procedural due

process claim. On January 24, 2018, the Court entered an Amended Preliminary Injunction that enjoined Defendant

> from suspending any further driver's licenses of individuals because of nonpayment of any fine, cost, fee or assessment under Michigan Compiled Laws § 257.321a *unless and until* Defendant or another entity: (1) offers drivers the option to request a hearing where they have the opportunity to demonstrate their inability to pay a fine, cost, fee and/or assessment; () provides a hearing when requested[]; (3) provides reasonable notice to drivers of the hearing opportunity; **and** (4) institutes alternatives to full payment for those unable to pay (e.g., realistic payment plans or volunteer service.)

(ECF No. 35 at Pg ID 647, footnote omitted and emphasis in original.)

Defendant filed an appeal and an emergency motion to stay. In the motion, Defendant argued that Plaintiffs lack standing because, even if they had suspensions for failure to pay, they also had suspensions for failure to appear in state court. According to Defendant, Plaintiffs could not benefit from the injunction as their licenses had been suspended on grounds alternative to failure to pay.

On February 7, 2018, the Sixth Circuit entered an order remanding the matter to address standing. (ECF No. 40.) The order reads, in relevant part:

> The Secretary has challenged the standing of the plaintiffs to pursue the claims alleged in this action. Specifically, the Secretary has submitted evidence indicating that Plaintiff Kitia Harris contacted the state court after she was issued a traffic ticket. Although she was granted an extension of time to pay her traffic fine and offered a payment plan, Harris allegedly failed to make any payments to the court or otherwise contact the court again concerning the payment plan. And the district court previously noted concerns about the standing of Plaintiff Adrian

Fowler. Because of the unresolved factual issues regarding standing, the court's jurisdiction over this case is unclear.

(*Id.*)

On remand, Plaintiffs filed a "Brief and Declaration in Support of Standing" to which they attach amended declarations from Ms. Harris and Ms. Fowler.  (EFC No. 42.)  Defendant responded to Plaintiffs' filing, Plaintiffs filed a reply brief, and Defendant filed a sur-reply.  (ECF Nos. 46, 50, 52.)  Plaintiffs also filed a motion seeking leave to file an amended complaint and a motion for class certification.  (ECF No. 43.)  The parties have fully briefed that motion.  (ECF Nos. 51, 53.)  Further, Defendant moved to strike Plaintiffs' motion, arguing that the Court lacks jurisdiction to entertain the motion under the Sixth Circuit's limited remand order.  (ECF No. 44.) Defendant's motion to strike also has been fully briefed.  (ECF Nos. 45, 47.)

## Standing[2]

"'Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.'"  *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  "Courts have explained the 'case or controversy' requirement through a

---

[2] "[O]nly one plaintiff needs to have standing in order for the suit to move forward." *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 710 (2015) (citing *Horne v. Flores*, 557 U.S. 433, 446-47 (2009); *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007)).  The Court therefore is focusing on Ms. Harris' standing, as it already has independently raised concerns regarding Ms. Fowler's standing.

series of 'justiciability doctrines,' including, 'perhaps the most important,' that a litigant must have 'standing' to invoke the jurisdiction of the federal courts." *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 709-10 (6th Cir. 2015) (quoting *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)).

An actual case or controversy also must persist throughout the entire litigation. *See Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013). If developments during the course of litigation eliminate the plaintiff's personal stake, the case generally must be dismissed as moot. *Id.* (citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). A case may become moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 410 (1980) (internal quotation marks and citation omitted). This latter "personal stake requirement" is a corollary to the rule that federal courts lack the power to "decide questions that cannot affect the rights of the litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

The Supreme Court has identified the following elements necessary to establish standing:

> First, [the p]laintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged

action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Defendant challenges Ms. Harris' standing to bring this lawsuit based on evidence it claims shows she was afforded due process before her license was suspended for failure to pay. Significantly, in her declaration, Ms. Harris offers a very different version of the events leading to her license suspension. Defendant asserts that Ms. Harris also lacks standing as a result of infractions she incurred after the filing of this lawsuit resulting in license suspensions for failure to appear in court. Defendant is essentially asserting a factual attack on the subject-matter jurisdiction alleged in Plaintiffs' Complaint.

"When a factual attack, also known as a 'speaking motion,' raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited

evidentiary hearing to resolve jurisdictional facts." *Id.* "[W]hen a defendant produces evidence challenging the factual existence of standing, a plaintiff must generally prove standing with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citing *Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)). There is an exception to this rule, however.

"[A] district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Gentek Bldg. Prods.*, 491 F.3d at 330 (citing *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). As the Sixth Circuit more recently stated:

> If "an attack on subject matter jurisdiction … implicates an element of the cause of action," we confine our jurisdictional inquiry to the allegations in the plaintiff's complaint, no matter what evidence a defendant has submitted in attempting to disprove jurisdiction.

*Harris*, 685 F. App'x at 472 (citing *Gentek Bldg. Prods.*, 491 F.3d at 330; *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350-52 (5th Cir. 1989)). If the jurisdictional attack "implicates an element of the cause of action," the Sixth Circuit instructs district courts to "'*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Gentek Bldg. Prods.*, 491 F.3d at 330

(emphasis in original) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981)).  Stated differently, "[w]hen the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 444 (6th Cir. 2006) (citing *Bell v. Hood*, 327 U.S. 678, 681-82 (1946)).

Ms. Harris claims that Defendant denied her procedural due process before suspending her driver's license.  Defendant challenges Ms. Harris' standing in part by presenting evidence to show that Ms. Harris in fact was informed of her right to a hearing to raise her indigency and seek an alternative to full payment of her traffic debt.  According to Defendant, Ms. Harris simply failed to appear and take advantage of that opportunity.  Hence, Defendant's attack on standing implicates the elements of Ms. Harris' procedural due process claim.  In other words, Defendant's factual attack on standing is intertwined with the merits of Ms. Harris' § 1983 claim.  Under these circumstances, Sixth Circuit precedent instructs that jurisdiction should be assumed.

Defendant also challenges Ms. Harris' standing, however, on her accumulation of additional infractions after this lawsuit was filed which resulted in her driver's license being suspended for failure to appear in court rather than her failure to pay her traffic debt.  Defendant argues that Ms. Harris' injury (that is, suspension of her license) therefore cannot be redressed through the relief she seeks in this litigation.  In other words, even if the Court held that Defendant violated the procedural due process

12

clause by suspending Ms. Harris' license for failure to pay her traffic debt without affording her an ability to pay hearing, Defendant maintains that Ms. Harris' failure to appear in court provides additional and separate grounds for suspending her license.

As set forth earlier, redressability is the third prong of the Article III standing test. *See Lujan*, 504 U.S. at 561. "[T]he relief the plaintiff is seeking must provide redress for the injury." *Parsons*, 801 F.3d at 715. "An injury is redressable if a court order can provide 'substantial and meaningful relief.'" *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 243 (1982)). "'A plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.'" *Id.* (quoting *Larson*, 456 U.S. at 243 n.15) (emphasis in original); *see also Massachusetts v. EPA*, 549 U.S. 497, 525 (2007).

Here, a favorable decision would remedy the violation of Plaintiffs' procedural due process rights caused by the suspension of their licenses for failure to pay before they were afforded ability to pay hearings. A favorable decision also puts Plaintiffs one step closer to regaining their driving privileges. The fact that there may remain other impediments for Plaintiffs regaining those privileges does not render the injury complained of—that is, the violation of their due process rights—non-redressable for standing purposes.

For these reasons, the Court concludes that Ms. Harris has standing to pursue the due process claim alleged in the Complaint.

## Plaintiffs' Motion for Leave to File Amended Complaint and Motion for Class Certification and Defendant's Motion to Strike

On remand, Plaintiffs filed a motion for leave to file an amended complaint to add two additional named plaintiffs and hopefully strengthen their position on standing. Plaintiffs also seek leave to file a motion for class certification. Defendant moves to strike Plaintiffs' motion, arguing that the Court lacks jurisdiction to decide it under the Sixth Circuit's "limited" remand order. Defendant also opposes the motion, arguing that Plaintiffs' proposed amendment would be futile and that it is premature to decide class certification.

"'As a general rule, an effective notice of appeal divests the district court of jurisdiction over the matter forming the basis for the appeal.'" *Zundel v. Holder*, 687 F.3d 271, 282 (6th Cir. 2012) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)). "However, 'an appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits.'" *Id.* (quoting *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995)); *see also* 11A Wright & Miller, Fed. Practice and Proc. § 2962, at 438-39 (2d ed. 1995) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from

14

taking other steps in the litigation while the appeal is pending."). "The district court retains some jurisdiction to continue deciding other issues during the pendency of an interlocutory appeal." *Zundel*, 687 F.3d at 282. (citations omitted).

As such, while the appeal in the present matter may preclude this Court from revisiting Plaintiffs' request for a preliminary injunction, the Court concludes that it does not prevent Plaintiffs from filing and the Court from deciding a motion to amend the complaint or to certify a class. The Court therefore rejects Defendant's argument that Plaintiffs' motion should be stricken. Moreover, even if the Court lacked authority to decide the motion because of Defendant's appeal, Federal Rule of Civil Procedure 62.1 provides an avenue for a district court to render an indicative ruling in that instance.[3]

Rule 15 of the Federal Rules of Civil Procedure instructs district courts to "freely grant[]" leave to amend "where justice so requires." Fed. R. Civ. P. 15(a)(2).

---

[3] Rule 62.1 provides:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a)

This is because, as the Supreme Court has advised, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *Id.* In the case of futility, "[a]mendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005).

Defendant argues that amending Plaintiffs' Complaint to add Nadiyah Jones and Jeanette Rankin as plaintiffs would be futile because Ms. Jones lacks standing and Ms. Rankin's claims are time-barred.[4] Specifically, Ms. Jones' driver's license was suspended because she owed approximately $626 for an unpaid traffic debt. (*See* Proposed Am. Compl. ¶ 16, ECF No. 43-1 at Pg ID 701.) On March 2, 2018,

---

[4] The statute of limitations for a claim brought pursuant to 42 U.S.C. § 1983 is the State's statute of limitations for personal injury actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted). For § 1983 actions arising in Michigan, the applicable limitations period is three years. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (citing Mich. Comp. Laws § 600.5805(10). The "limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1995). With respect to Plaintiffs' procedural due process claim, this would be when they learned that their licenses were suspended for failure to pay without being afforded ability to pay hearings.

however, Ms. Jones paid the outstanding fines and costs and the suspension was terminated. (ECF No. 51-11 at Pg ID 1015; *see also* ECF No. 53 at Pg ID 1036.) Ms. Rankin's suspension arises from a ticket in December 2011. (*See* Proposed Am. Compl. ¶ 83, ECF No. 43-1 at Pg ID 712.) In April 2012, Ms. Rankin learned the amount she owed for the infractions and her driving privileges were suspended. (*Id.* ¶ 88, Pg ID 712; Rankin Decl. ¶¶ 13-15, ECF No. 43-7 at Pg ID 762.)

In reply, Plaintiffs point out that Ms. Jones had standing when they sought leave to amend their Complaint. Plaintiffs urge the Court to grant their motion for leave *nunc pro tunc*, and deem the filing date of their Amended Complaint to be the day they filed their motion—that is, while Ms. Jones' license was still suspended. With respect to Ms. Rankin, Plaintiffs urge the Court to apply the continuing violation doctrine to find her claims not barred by the applicable three-year limitations period. (Pls.' Reply Br. at 4-6, ECF No. 53 at Pg ID 1037-39.) Plaintiffs contend that "Defendant committed a continuing wrongful act by rendering Ms. Rankin's license ineligible for routine renewal on the fourth anniversary of her license expiration, which occurred in 2017." (*Id.* at 5, Pg ID 1038.)

While federal courts have inherent authority to issue *nunc pro tunc* orders to correct mistakes in the record, that power is quite limited. As the Ninth Circuit Court of Appeals has explained:

> "*Nunc pro tunc* amendments are permitted primarily so that errors in the record may be corrected. The power to amend *nunc pro tunc* is a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice." *Martin v. Henley*, 452 F.2d 295, 299 (9th Cir. 1971). It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose. *See Kusay v. United States*, 62 F.3d 192, 193 (7th Cir.1995). Rather, its use is limited to making the record reflect what the district court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence. *See Fierro v. Reno*, 217 F.3d 1, 4-5 (1st Cir. 2000).

*United States v. Sumner*, 226 F.3d 1005, 1009-10 (9th Cir. 2000); *see also Patterson v. Chrysler Group, LLC*, 845 F.3d 756, 761 (6th Cir. 2017) (citing cases and explaining that "*[n]unc pro tunc* orders do not revise the substance of what has transpired, backdate events, or give rise to new substantive rights, including resetting the statute of limitations"); *Crangle v. Kelly*, 838 F.3d 673, 680 (6th Cir. 2016) (quoting *Kusay v. United States*, 62 F.3d at 193) ("*Nunc pro tunc* orders are customarily used only 'to correct erroneous records,' not to 'revise the substance of what transpired or to backdate events.'"). Based on this authority, the Court concludes that it lacks the power to issue the *nunc pro tunc* order Plaintiffs request. In other words, the Court concludes that it cannot back-date the filing of Plaintiffs' Amended Complaint to avoid the futility of adding Ms. Jones as a plaintiff. Moreover, even if Ms. Jones had standing when Plaintiffs moved to add her as a plaintiff, her claims are now moot—an additional reason to find Plaintiffs' attempt to

add her as a plaintiff futile.  The Court similarly concludes that the continuing

violation doctrine has no applicability here.

The Sixth Circuit has identified three requirements for finding a continuing

violation:

> "First, the defendant's wrongful conduct must continue after the
> precipitating event that began the pattern. … Second, injury to the
> plaintiff must continue to accrue after that event. Finally, further injury
> to the plaintiff must have been avoidable if the defendants had at any
> time ceased their wrongful conduct."

*Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)

(brackets omitted) (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934,

940 (6th Cir. 1999)).  "'[A] continuing violation is occasioned by continual unlawful

acts, not continual ill effects from an original violation.'" *Id.* (quoting *Tolbert*, 172

F.3d at 940) (additional quotation marks and citation omitted).  "Passive inaction does

not support a continuing violation theory." *Id.*

Here, the right Plaintiffs assert is the right to procedural due process.[5]  "'In

procedural due process claims, the deprivation by state action of a constitutionally

protected interest in 'life, liberty or property' is not itself unconstitutional; what is

---

[5] While Plaintiffs' proposed Amended Complaint admittedly alleges additional
constitutional violations (*see* ECF No. 43-1), this Court found them unlikely to
succeed on those claims in its December 14, 2017 decision addressing Plaintiffs'
preliminary injunction motion.  (*See* ECF No. 21.)  Amending the complaint to assert
those claims on behalf of Ms. Rankin would be futile for the reasons stated by the
Court in that earlier decision.

unconstitutional is the deprivation of such an interest *without due process of law*.'"
*Edison*, 510 F.3d at 635 (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1981))
(emphasis in original) (additional quotation marks and citation omitted).  The premise
of Plaintiffs' due process claim is Defendant's failure to afford individuals ability to
pay hearings before suspending their driver's licenses for failure to pay their traffic
debts.  For Ms. Rankin, this occurred in April 2012.  Any harmful effects resulting
from that suspension (such as the ineligibility of Ms. Rankin's license for routine
renewal on the fourth anniversary of the suspension) constitute "continuing ill effects"
which do not make out a continuing violation.

Because Ms. Rankin's license was suspended without the process Plaintiffs
claim was due to her more than three years before Plaintiffs moved to add her as a
plaintiff, the Court holds that her procedural due process claim is time-barred.
Therefore, it also would be futile for Plaintiffs to amend their complaint to add Ms.
Rankin as a plaintiff.

For these reasons, the Court is denying Plaintiffs' motion for leave to file an
amended complaint.

It is premature to decide Plaintiffs' motion for class certification at this time.
While the Court has found that at least Ms. Harris has standing to pursue this lawsuit
on behalf of the putative class, that finding undoubtedly will be included as an issue
for review by the Sixth Circuit in the pending appeal.  Until the issue is finally

resolved, it makes little sense for this Court to decide whether Ms. Harris' claims are typical of the putative class and whether she is an adequate class representative. For that reason, the Court is denying Plaintiffs' request to file their class certification motion at this time.

## Conclusion

To summarize, this Court concludes that Ms. Harris has standing to pursue this lawsuit and that her claims have not been rendered moot by the additional infractions she incurred after the action was filed. Ms. Jones lacks standing, however. Further, Ms. Rankin's claims are barred by the applicable statute of limitations. As such, the Court concludes that it would be futile for Plaintiffs to amend their complaint to add Ms. Jones or Ms. Rankin as plaintiffs. Therefore, the Court is **DENYING** Plaintiffs' motion for leave to file an amended complaint. The Court also is **DENYING** Plaintiffs' request to file their motion for class certification at this time.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: April 11, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, April 11, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager